O P I N I O N
Appellant Teresa Ruff appeals the juvenile court's adoption of the magistrate's decision, over objections, in which the magistrate set forth an interim order of visitation concerning Anthony Ruff, child of Ms. Ruff and Appellee Nicholas Driscoll. Ms. Ruff contends the juvenile court lacked jurisdiction over the parentage action brought by Mr. Driscoll and that the court improperly adopted the magistrate's decision before the magistrate's decision had been filed. We begin our consideration of Ms. Ruff's claimed errors with a recitation of the facts and procedural history of the case.
Anthony Ruff was born to Ms. Ruff in Montgomery County, Ohio, on September 19, 1996, following a short-term relationship with Mr. Driscoll which ended prior to the child's birth. At the time, both parties resided in Dayton, Ohio, although the record reveals that at some time after initiation of the present action, Ms. Ruff relocated to the Indianapolis, Indiana area in connection with her employment, and Mr. Driscoll moved to his parents' home in Columbus, Ohio. Two months after Anthony's birth, Mr. Driscoll filed a complaint to establish parentage in the Court of Common Pleas of Montgomery County, Juvenile Division. Mr. Driscoll also requested that the juvenile court order permanent companionship rights as between him and his son, and other relief as may be just and equitable. On January 2, 1997, Ms. Ruff filed her answer admitting paternity and counterclaiming for child support, expenses, health insurance, and requesting that Mr. Driscoll's visitation with Anthony be restricted.
After a hearing, the magistrate issued her decision on January 21, 1998, finding Mr. Driscoll to be the legal and natural father of the child, ordering child support, and setting forth each party's obligation pertaining to the child's health care arrangements. The juvenile court adopted the magistrate's decision the day it was issued, and neither party filed objections.
On January 23, 1998, a hearing was held before the magistrate on the issue of visitation. On March 4, the magistrate issued a second decision setting forth a visitation schedule which allowed Anthony's time with Mr. Driscoll to commence slowly and gradually increase over a period of several months at which point the standard order of visitation would govern Mr. Driscoll's time with his son. Because Ms. Ruff had expressed reservations about the reliability of her vehicle, Mr. Driscoll was to travel to Indianapolis where the initial visits would take place. Later, as the father and son became acquainted, visitation was to take place at Mr. Driscoll's parents' home in Columbus, again with Mr. Driscoll bearing the burden of transporting Anthony to and fro. Ms. Ruff filed a general objection to the magistrate's decision on March 19, and was granted two extensions of time in which to file her specific objections in order to allow time for completion of the transcript of the hearing. Meanwhile, Mr. Driscoll, understandably frustrated with the delays preventing him from beginning a relationship with his son, moved for an interim order of visitation. A hearing was held before the magistrate on August 21, 1998; Mr. Driscoll, his attorney, and Ms. Ruff's attorney were present, but Ms. Ruff was not. Thereafter, the magistrate granted Mr. Driscoll's motion for an interim order of visitation, and set forth a visitation schedule that was somewhat less restrictive than that included in the magistrate's earlier decision. Specifically, under the interim order Mr. Driscoll was given more flexibility regarding where his visits with his son were to take place. In addition, the interim order provided that the parties would share the responsibility of transporting Anthony to and from his visits with his father by designating Richmond, Indiana as the location for the initial visits, with each party responsible for their own transportation. As in the earlier order, once the standard order of visitation was implemented, Mr. Driscoll was to be solely responsible for providing transportation to and from the visits.
The record reflects that the magistrate's order granting Mr. Driscoll's motion for an interim order of visitation was filed on September 2, 1998, at 2:04 p.m., and that the magistrate noted therein that Ms. Ruff's objections to the magistrate's March 4 decision remained pending. Less than four hours earlier, however, at 10:31 a.m., the juvenile court had issued its entry and order dismissing Ms. Ruff's objections as untimely, having been filed three days past the deadline in spite of the extensions previously granted. The juvenile court also declared the magistrate's interim order of visitation as the permanent order of visitation.
On September 11, Ms. Ruff filed a general objection to the juvenile court's September 2 decision and entry, which was followed by her specific objections on November 25, 1998. Ms. Ruff claimed therein that the magistrate's interim order of visitation was improper inasmuch as Mr. Driscoll had requested the order on grounds that he should enjoy visitation with Anthony while Ms. Ruff's objections to the magistrate's March 4, 1998, decision were pending. Ms. Ruff's objections, however, were no longer pending at the time the interim order was issued, having been dismissed by the juvenile court as untimely. Consequently, Ms. Ruff argued, the justification for the interim order of visitation had dissolved before the order was issued. Ms. Ruff also objected to the juvenile court's adoption of the interim order of visitation as permanent, claiming it violated Civ.R. 53(E)(4)(c) which provides that "[a]n interim order shall not extend more than twenty-eight days from the date of its entry. . . ." On January 5, 1999, the juvenile court issued its entry and order overruling Ms. Ruff's objections to the magistrate's interim order and the court's adoption thereof. The juvenile court explained that in declaring the magistrate's interim order to be the permanent order of visitation, it was merely adopting the terms of the interim order. This, the court stated, was necessary since the original visitation order contained dates upon which visitation was to begin and then increase, as well as the date upon which the standard order of visitation would take effect. Since all the dates specified in the original visitation order had long since passed, the juvenile court adopted the revised dates stated in the magistrate's interim order. Furthermore, the juvenile court rejected Ms. Ruff's contention that by declaring the interim order to be a permanent order the court had extended the interim order indefinitely in violation of Civ.R. 53(E)(4)(c).
The same day she filed her objections to the magistrate's interim order, Ms. Ruff also filed a motion to dismiss the case in its entirety on grounds that the juvenile court was without subject matter jurisdiction. In her accompanying memorandum, she argued that R.C. § 3111.22 precludes the filing of paternity actions in the juvenile court unless the plaintiff has first requested an administrative determination of the existence or nonexistence of a parent and child relationship. Ms. Ruff contended Mr. Driscoll's failure to exhaust his administrative remedies deprived the juvenile court of jurisdiction over the parentage action. There is no indication in the record that the juvenile court ruled on the motion to dismiss, and we presume it was overruled. See Akbar-el v. Muhammed (1995), 105 Ohio App.3d 81,85 at fn. 2, citing Newman v. Al Castrucci Ford Sales, Inc.
(1988), 54 Ohio App.3d 166, 169.
Ms. Ruff timely appeals the juvenile court's overruling of her objection and her motion to dismiss, assigning two errors. First, she contends the juvenile court's lack of jurisdiction renders all orders issued in this case void. Second, she claims the juvenile court's declaration of the interim order to be the permanent order of visitation was erroneous for two reasons: (1) the interim order was nonexistent when the juvenile court purported to declare it permanent, and (2) declaring the interim order to be permanent violated Civ.R. 53(E)(4)(c). For the reasons below, we affirm the judgment of the juvenile court.
 I.
The trial court is without subject matter jurisdiction in this case and, therefore, all of it's [sic] orders are void.
In her first assignment of error, Ms. Ruff contends that R.C. § 3111.22(A)(1) deprives the juvenile court of jurisdiction over paternity actions under the circumstances of the present case. That division provides as follows:
 Except as otherwise provided in division (A)(2) of this section, no person may bring an action under sections 3111.01 to 3111.19 of the Revised Code before requesting an administrative determination of the existence or nonexistence of a parent and child relationship from the child support enforcement agency of the county in which the child or the guardian or legal custodian of the child resides.
R.C. § 3111.22(A)(1). Division (A)(2) permits parentage to be determined in the first instance by the probate court, the court of common pleas, or the juvenile court under certain circumstances, none of which are present in the instant case. Since Mr. Driscoll's complaint for a paternity determination was not first presented to the child support enforcement agency (hereinafter "CSEA") as required by the statute, Ms. Ruff argues, the juvenile court was never possessed of subject matter jurisdiction over the case. For the reasons that follow, we do not agree with Ms. Ruff's contention that R.C. § 3111.22(A)(1) is jurisdictional in nature.
Subject matter jurisdiction addresses the power of a court to decide an issue and is conferred by the Ohio Constitution and the legislature. Springfield City School Support Personnel v. StateEmp. Relations Bd. (1992), 84 Ohio App.3d 294, 297. The juvenile court has been given original jurisdiction over actions authorized by R.C. §§ 3111.01 through 3111.19 via R.C. § 3111.06(A). Nothing in the language of R.C. § 3111.22(A)(1) indicates a desire on the part of the legislature to curtail or abrogate the juvenile court's jurisdiction over paternity actions, and we are without doubt that the legislature, had it wished to do so, could have and would have employed language expressive of its intent, as it has done in other statutes. See e.g. R.C. § 3105.18(E) (providing that a court entering a decree of divorce or dissolution "does not have jurisdiction" to modify amount or terms of spousal support except in certain situations). In the case of R.C. § 3111.22(A)(1), the legislature instead chose language that is plainly directed toward what a person may or may not do when seeking a paternity determination, and does not purport to regulate the juvenile court's subject matter jurisdiction. Consequently, we find no jurisdictional defect in Mr. Driscoll's filing of his complaint in the juvenile court. Although Ms. Ruff could certainly have challenged the propriety of the complaint on the basis of R.C. § 3111.22(A)(1) in her answer, she failed to do so, and the issue was thereby waived.
We also observe that Ms. Ruff asserted a counterclaim in her answer to the complaint in which she admitted Mr. Driscoll was Anthony's father, and in which she sought, inter alia, child support and a determination of the parties' responsibilities pertaining to Anthony's health care. Even if we were to agree with Ms. Ruff on the jurisdictional issue discussed above, it would nevertheless remain true that although complaints validly filed but which do not confer subject matter jurisdiction over the action are voidable and can be dismissed or corrected by an amended complaint, a counterclaim, properly filed and served prior to the dismissal of the complaint, that states a legally sufficient basis to confer jurisdiction on the court, survives the dismissal. Alliance Group, Inc. v. Rosenfield (1996), 115 Ohio App.3d 380,388. Since, under the circumstances present in this case, the juvenile court has exclusive original jurisdiction to hear and determine an application for child support under R.C. § 2151.23(A)(11), Ms. Ruff's counterclaim would have been a sufficient basis to confer jurisdiction on the court even if Mr. Driscoll's complaint had been dismissed. We conclude, therefore, that Ms. Ruff's jurisdictional argument, were it correct, would not result in dismissal of the entire case, as she requests of this court, and we decline to provide her that remedy.
For the reasons stated, we overrule Ms. Ruff's first assignment of error.
 II.
The trial court erred to the prejudice of the Appellant when it adopted the interim order of visitation contained in the September 2, 1998 decision of the magistrate as an order of the court.
In her second assignment of error, Ms. Ruff contends the juvenile court's adoption of the magistrate's interim order of visitation was improper since the magistrate's order was technically not in existence until after the juvenile court's order and entry was filed. Although Ms. Ruff admirably sets forth the law regarding the procedure to be followed for a trial court's adoption of a magistrate's decision, she utters not a single word as to how she has been prejudiced by the error alleged. As such, and because we can fathom no way in which Ms. Ruff has been left in a position different from that which she would have been in had the filing of the magistrate's decision preceded that of the juvenile court's entry, we find any error to be harmless.
Ms. Ruff also argues that the juvenile court's declaration converting the interim order into the permanent order of visitation violated Civ.R. 53(E)(4)(c), which provides that no interim order shall be for more than twenty-eight days unless, for good cause shown, it is extended for an additional twenty-eight days. Ms. Ruff contends that the interim order, by its terms, purported to set forth a visitation schedule for a period of time in excess of two hundred days. Aside from the obvious fact that the visitation order ceased to be an interim order upon the juvenile court's declaration that it be made permanent, we observe that Ms. Ruff has again failed to demonstrate how she has been prejudiced by this alleged error. As before, therefore, we find any error to be harmless and consequently overrule Ms. Ruff's second assignment of error.
Having found no merit to either of Ms. Ruff's two assignments of error, we affirm the judgment of the juvenile court, and direct that court to revise the dates contained in the formerly interim, now permanent, order of visitation as set forth in the magistrate's September 2, 1998, decision so that visitation may finally and immediately commence between Mr. Driscoll and his son.
GRADY, P.J. and FAIN, J., concur.
Copies mailed to:
Robert H. Snedaker, III
Robert D. Goelz
Hon. Michael B. Murphy